## PRITCHETT *et al v.* STEVENS.

### [88 South. 627, No. 21869.]

IMPROVEMENT.  *Compensation to* occupant *dispossessed by owner of land awarded according to rules in ejectment actions.*

In awarding compensation to an occupant of land when dispossessed by the owner thereof, a court of equity will follow the rule set forth in section 1848, Code of 1906 (section 1481 Hemingway's Code), et seq., by which the right of such occupant to such compensation is fixed in an action of ejectment.

Appeal from chancery court of Jackson County.

HON. W. M. DENNY, JR., Chancellor.

Suit by H. E. Pritchett and others against Delphine Stevens.  From the judgment, complainants appeal.  Reversed in part, and remanded.

*H. B. Everett,* for appellant.

Section 1848 of the Code of 1906, allows an unsuccessful defendant in ejectment the value of improvements that are valuable and not ornamental put on the land by the defendant or one under whom he claims, etc., but "A defendant shall not be entitled to such compensation for improvements or taxes unless he claims the premises under some deed or contract of purchase acquired or made in good faith."  This must be shown affirmatively by the defendant by some sort of clear proof.  Alfred Bang occupied the land for some twenty odd years before he filed a claim to enter it, which was the beginning of any sort

of claim of ownership and during this time he says he bought the Walton improvements, built a barn, cleared a small piece of land and set out some pecan trees. Of course the Walton improvements belonged to the land and to the owner at that time, but there is no evidence as to the time Bang made any of his improvements. Whether it was done when he knew he was not the owner before his entry and when he was a trespasser or after his entry. True he says, as suggested by counsel by a question that he made some of these so-called improvements when he claimed to be owner, but that is not clear as a mere claim is manifestly not sufficient.

In *Miller* v. *Ingram,* 56 Miss. 510, Judge Campbell clearly expressed both the statute and equity rule in the following terse sentence: "Plaintiff below was entitled to the rent of the lot improved and defendants were entitled to the value of the improvements, and the law is, the improvements belong to the owner of the land; but the occupant in good faith, who, believing that he owns the land, makes permanent improvements on it, whereby its value is enhanced, before notice of the intention of the plaintiff to bring an action, is entitled to pay for his improvements thus made, to be applied first to the payment of rent and afterwards for any balance to be a lien upon the land."

And in *Thomas* v. *Thomas,* 69 Miss. 564, 13 So. 666, the court said, the defendant there could only claim for improvements made by virtue of a claim to the premises under some deed or contract of purchase made or acquired in good faith, and declare the rule of proof as follows: "To make good his claim to compensation for improvements Richard should have shown that, when he made the improvements, he was claiming the premises under some deed or contract of purchase, made or acquired in good faith, and not that he expected his father would recognize his supposed title to the lands and give him the same."

No attempt was made to meet this requirement of the law as to the *bona fide* claim of ownership and color of title as it is sometimes called, held and acquired by the

party making the improvements as of the date same were made. Walton was, so far as the proof shows, a trespasser, and so was Alfred Bang until he made his application to enter his homestead. But nearly two years before this attempt to enter the land, the legal title had vested in the appellants, together with all the buildings, trees, fences and fixtures free of any possible claim thereto by either Walton or Bang. So that under no circumstances could defendant claim for improvements made prior to the date of Bang's attempted entry in 1907, made after he had been using and occupying the land and its improvements for some twenty years.

But the chancellor in this case manifestly did not regard the statute or any known precedent in his methods and findings. He did not find the value of the land without the improvements to be allowed for, if any, and then the value of the property as enhanced by the allowed improvements and then fix the rental value of the land with improvements belonging to the complainants and for which no allowance was allowable. If defendant Stevens was entitled to pay for the improvements made by Bang, then complainants must be allowed to set-off against the same all proper charges for which Bang was liable to the complainant for his use and occupation of the land for at least six years before the suit was filed.

But going back to the first assignment of error I do not see how the defendant in this cause could recover for any improvements except such as was the subject of a claim by her cross-bill and the issue thereon made by answer thereto. Conceding her right to be paid for improvements it is manifest that she had the right to waive the claim or sue for and recover same by a cross-action instituted by her cross-bill as she did. But the same rule as to pleading and issues and proof applies to a cause prosecuted by cross-bill as to an original bill. Were the cross-complainant and appellee, here, sued for improvements made by her within certain fixed dates, as per this allegation, at page 25 of the record.

That after the defendant and cross-complainant purchased said land, as above stated, and under the conveyance thereof from Thomas L. Murphy, first aforesaid, which was done in good faith and without knowledge, notice or suspicion to complainant of the claims of defendants to the land, and defendant and cross-complainant herein cleared about five acres of the land at a cost of about three hundred and seventy-five dollars, erected thereon a house, barn, fencing and other improvements to the value of about three hundred dollars, and set out pecan, fig, and other fruit trees thereon of a permanent nature, to the aggregate value of about seventy-five dollars or thereabout, and for which she should be reimbursed before being ousted from said land, and which cross-complainant avers the cross-defendants be required to pay her; that the same be made and held a lien on said land in the event the court should hold the title of cross-complainant acquired as aforesaid, to be invalid, null and void.

The conveyance referred to from Thomas L. Murphy to appellee, as recited in the paragraph of the bill next preceding the one above quoted is of date August 16, 1913, copied in the record at page 65. The proof is that cross-complainant made no improvements whatever and only gave two hundred dollars for the land with improvements already on it. Her deed contains a covenant of general warranty.

*Denny & Heidelberg,* for appellee.

Appellants in brief it seems depend more upon the fact that the chancellor made no specific finding as to the amount of rent, and also that because of the improvements placed upon the land was placed thereon before the appellee's title thereto matured, or rather before the title left the United States and therefore they contend that there should be no amount allowed for the improvements or the appellee should not be allowed any amount.

As to the first proposition we submit that chancellor's finding thereon takes in all matters of the accounting. Whether or not he set out by specific figures the various items from the testimony he stated in the decree after deducting reasonable rental following his finding that one hundred dollars was the value of the improvements, so we submit that his finding upon that is a closed transaction, as the chancellor heard the testimony and we submit that this is sufficient.

As to the second proposition, we submit that like the case of *Prichett et al.* v. *Hibbler,* No. 21868, almost a companion case to this one, that the hard and fast rule of the law should not apply in cases of this kind and besides, appellants cannot complain as to improvements made while the land was the property of the United States, it matters not who placed these improvements thereon, at the time they were placed thereon, the appellants were not vested with the title to this land and it appears from the testimony that Walton and Bang were upon the land and if the United States did not say, "get off and you are not entitled to remain here or you shall not have what you have placed hereon," surely the appellants who come in by a chance such as might be described as a turn of the wheel of fortune, cannot say that the appellees and those through whom she claims shall not be entitled to their improvements. If the appellants had filed an ejectment suit there probably would and could have been another judgment entered but the appellants having come into a court of equity and asking for equity, they seem now to object to equity administering complete and full equity between the parties hereto. We submit that with the testimony of Bang in this cause showing that the major part of the improvements upon this property were placed there long years ago by those who were using the same and finally when it appears that lands in the section finally became of enough value to homestead that this land was homesteaded and proved out, and then to let the appellants come in and take everything of value because the

Congress of the United States and the president have seen fit to open up a gateway whereby innocent and unsuspecting people become entangled in the meshes of the law in the utmost good faith that they are doing only what they or any other citizen can do who has not done so before, that is enter and prove out a homestead of one hundred and sixty acres of land. We submit that the so-called "McLauren Act" while its purpose was well intended, yet it has and can be and we think in this particular case if, decided as appellants want it decided and construed, made the instrument of untold trouble and injustice. The appellants sit by and wait, wait, and wait until it. seems they think that property has reached its maximum of value before ten years would be up to bar them—let people enter homestead, improve same, prove them out and maybe, as in this case, sell them, and then come in and say that "it is ours and the law says so and you must give us land, house, improvements and all and get out of doors and enter and prove out another homestead or buy you another home." So we submit that under circumstances of this kind courts of equity are right and natural justice and the rudiments of fairness calls for extending the equitable justice and right to cover those who are unfortunate enough to walk into the trap as laid by the "McLauren Act," in cases of this kind.

We therefore respectfully submit that the decree should be affirmed.

SMITH, C. J., delivered the opinion of the court.

This suit was begun by the appellants against the appellee in the court below to establish their title to certain land, and to recover the possession thereof and rent therefor. The appellee by her answer denied the appellants' title, and claimed, in event the appellants should be held to have title, an allowance for certain improvements alleged to have been placed by her on the land. On final hearing the appellants were adjudged to be the owners of the land,

and entitled to the possession thereof, but were directed
to pay the appellee the sum of one hundred dollars, ad-
judged to be the value of improvements made by the ap-
pellee on the land in excess of the rent for the land due by
her to the appellants.

The appellants, being dissatisfied with the allowance to
the appellee for improvements, appeal to this court, and
the only question presented to us is whether or not the
allowance therefor to the appellee should have been made.
The appellants acquired title to the land from the govern-
ment in 1905, but in 1912 another patent thereto was is-
sued by the government to Alfred Bang, through whom the
appellee claims by mesne conveyances. In 1884, one Wal-
ton entered upon the land without any right so to do, cut
the timber therefrom, put several acres of it in cultivation,
and built a log house and barn thereon. Some years there-
after Walton died, and Bang, without any right so to do,
entered into possession of the land and paid Walton's
widow twenty-five dollars for the improvements thereon.
While Bang was in possession of the land, he made other
improvements of small value, but whether before or after
he obtained his patent from the government does not ap-
pear. No improvements whatever were made on the land
by the appellee, her claim being that she is entitled to re-
cover the improvements made thereon by Bang and Walton.

Counsel for the appellee seem to admit that if this were
an action of ejectment the appellee would not be entitled
to recover for the improvements placed on the land, because
of the provision of section 1848, Code of 1906 (section
1481, Hemingway's Code), that—

"A defendant shall not be entitled to . . . compen-
sation for improvements . . . unless he claim the
premises under some deed or contract of purchase acquired
or made in good faith."

The rule by which equity awarded compensation for im-
provements before this statute was enacted seems to be
practically the same as that of the statute, as will appear
from an examination of the authorities, but whether it is

or not is wholly immaterial, for, in awarding compensation for improvements, courts of equity will be guided by the statute, *"Aequitas sequitur legem."* Wille v. *Brooks,* 45 Miss. 542.

The decree of the court below will be reversed in so far as it deals with the rent and improvements, and the cause will be remanded for a new trial on those issues. In all other respects, the decree of the court below will remain in full force and effect.

*Reversed in part, and remanded.*